UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BURROUGHS, | ) | Case No. 1:10CV1239 |
| | ) | |
| Plaintiff, | ) | Magistrate Judge McHargh |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE | ) | |
| Commissioner | ) | |
| of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties.  (Doc. 18).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael Burroughs's ("Burroughs" or "Plaintiff") application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

Plaintiff raises the following objections in his appeal of the Commissioner's decision: (1) the Administrative Law Judge failed to properly weigh the medical opinions under the factors stated in 20 C.F.R. § 404.1527(d) and, subsequently, failed to adequately articulate the weight given to such medical opinions; (2) the ALJ failed to consider all of the evidence when evaluating Plaintiff's mental impairment; (3) the hypothetical question posed by the ALJ to the vocational expert was inadequate; and (4) remand is necessary to consider additional evidence.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  <u>Introduction and Procedural History</u>

On September 3, 2004, Plaintiff filed applications for Disability Insurance benefits ("DIB")

and Supplemental Security Income ("SSI"), alleging a disability onset date of September 14, 2000.

(Tr. 15, 51-53).  Plaintiff's applications were denied initially, and upon reconsideration; Plaintiff,

however, filed a timely request for an administrative hearing on September 15, 2005.  (Tr. 32).

On June 10, 2008, ALJ Kenneth E. Stewart (the "ALJ" or "ALJ Stewart") held a hearing

during which Plaintiff and vocational expert Glee Ann Kehr (the "VE") both testified.  (Tr. 453-66).

Dr. Bernard Stevens, a medical expert, was scheduled to be present but did not appear.  (Tr. 455).

On August 22, 2008, the ALJ rendered a decision.  (Tr. 12-21).  In his decision, the ALJ found that

Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of light

work except for work requiring binocular vision.  (Tr. 18).  After concluding Plaintiff had no past

relevant work experience, the ALJ determined Plaintiff was capable of performing work that existed

in significant numbers in the national economy.  (Tr. 20).  The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied further review.  (Tr. 6-10).  Plaintiff

then filed an appeal to this Court.

## II.  <u>Evidence</u>

### A.  <u>Personal and Vocational Information</u>

Plaintiff, born in 1972, was twenty-eight (28) years old on his alleged onset date and thirty-

six (36) at the time the ALJ issued his decision.  (Tr. 15, 456).  Plaintiff obtained a GED after

completing the eighth grade and has no past relevant work experience.  (Tr. 457).

**B.  Hearing Testimony**

At the hearing, Plaintiff recounted his 2004 hospitalization, the result of a heart attack.  (Tr. 458).  Plaintiff testified that he suffered from Addison's disease, Schmidt's syndrome, and colitis. *Id*.  Noting that these impairments left him tired and weak, he indicated that he was unable to stand or sit for long durations of time or concentrate, and was easily confused.  (Tr. 459).  Additionally, he testified that his heart medication caused him stomach problems.  (Tr. 462).  Burroughs stated that he could not be around people because "[his] body [didn't] fight off germs."  *Id*.  He asserted that he had depression, but indicated that he was unable to seek treatment for this condition because he did not have insurance.  (Tr. 463).  Furthermore, Plaintiff remarked that he was legally blind in his right eye.  (Tr. 464).

At the conclusion of Plaintiff's testimony, the ALJ asked the VE whether there were any light, unskilled jobs available in the Cleveland area for someone of the claimant's age with no past relevant work experience.  (Tr. 464).  The VE stated that there were jobs available for a person with those tratits, namely: a mail clerk- 1600 jobs; a machine feeder- 1300 jobs; and a housekeeper- 2600 jobs.  (Tr. 464).  The ALJ then requested the VE to estimate whether there were any unskilled jobs available to an individual with the same traits, but at the sedentary exertional level.  The VE identified the following: account clerk- 2400 jobs; telephone clerk- 1600 jobs; and sorter- 3200 jobs. (Tr. 465). Additionally, the ALJ questioned the VE regarding an employer's tolerance for an employee being off task during the workday.  *Id*.  The VE responded that the hypothetical individual would need to be on task 85% of the workday in a non-manufacturing setting and 90% of the time in a manufacturing setting.  *Id*.

3

## C. Medical Evidence

### 1. Physical Impairments

Plaintiff's physical impairments were assessed by a collection of doctors.  On April 2, 2001, Dr. William R. Kelly, a state agency physician, reviewed Plaintiff's medical history and drafted an RFC report evaluating Plaintiff's physical impairments.  (Tr. 154-62).  Dr. Kelly noted that Plaintiff had Addison's disease, but stated that it was controlled with medication.  (Tr. 155).  Moreover, Dr. Kelly opined that Plaintiff could perform light work.  *Id.*  Dr. Kelly found no postural, manipulative, visual, communicative, or environmental limitations on Plaintiff's ability to work.  (Tr. 156-58).

On February 2, 2005, state agency physician, Dr. Arthur L. Sagone, assessed Plaintiff's physical impairments and issued an RFC report detailing his findings.  (Tr. 213-21).  Dr. Sagone opined that Plaintiff had Addison's disease and remarked that it was "well controlled."  (Tr. 214). However, Dr. Sagone opined that Plaintiff was at risk for hypotension during times of stress.  (Tr. 217).  Additionally, Dr. Sagone asserted that Plaintiff was capable of performing light work, but could not perform jobs which required climbing.  (Tr. 214).  Lastly, Dr. Sagone concluded that Plaintiff should avoid concentrated exposure to heat, and all exposure to machinery and unprotected heights.  (Tr. 215, 217).

On July, 26, 2005, Dr. Elizabeth Das, a state agency physician, completed an RFC report evaluating Plaintiff's physical impairments.  (Tr. 381-89).  Dr. Das noted that Plaintiff had a history of coronary artery disease, Addison's disease, and hypothyroidism.  (Tr. 382).  However, she confirmed that Plaintiff's Addison's disease and hypothyroidism were both controlled by medication.  *Id.*  Additionally, Dr. Das found Plaintiff capable of performing light work.  (Tr. 382). Dr. Das restricted  Plaintiff from performing work requiring any balancing or more than occasional

4

climbing, but imposed no manipulative, visual, communicative, or environmental restrictions on Burroughs's ability to work.  (Tr. 383-85).

## 2.  Mental Impairments

Plaintiff's mental impairments were assessed by a number of physicians.  On April 2, 2001, Dr. Richard N. Davis, a clinical psychologist, examined Plaintiff.  (Tr. 148-53).  He found that Plaintiff was "restricted in his daily activities because of his presenting physical problems which result[ed] in hi[m] be[coming] chronically fatigued," although he was able to care for his own personal needs and had no physical problems that would "interfere with hi[m] lifting, carrying, or handling objects."  (Tr. 152).  However, Dr. Davis opined that Plaintiff had no restrictions interfering with his ability to think logically or use common sense and judgment.  *Id.*  Ultimately, Dr. Davis concluded that Plaintiff suffered from depressive disorder, polysubstance dependence, antisocial personality disorder, and Addison's disease.  (Tr. 152-53).  He assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60, indicating moderate symptoms.  (Tr. 153).

On June 5, 2001, state agency psychologist, Dr. Caroline T. Lewin, reviewed Dr. Davis's report.  (Tr. 163-76).  Dr. Lewin found, *inter alia*, that Plaintiff had only mild restrictions on activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 173).  Dr. Lewin concluded that Plaintiff's mental impairments were not severe.  (Tr. 176).

On December 13, 2004, Dr. Kenneth R. Felker, a psychologist, examined Plaintiff.  (Tr. 189-94).  Plaintiff denied being depressed, but indicated that he was anxious at times.  Dr. Felker opined that Plaintiff suffered from mixed substance abuse (in recent remission), psychological factors affecting a medical condition, and mixed personality disorder.  (Tr. 192).  Subsequently, Dr. Felker

5

assigned Plaintiff a GAF score of 56, indicating moderate symptoms.  *Id*.

On January 23, 2005, state agency psychologist, Dr. Mel M. Zwissler, reviewed Dr. Felker's report.  (Tr. 195-212).  Dr. Zwissler diagnosed Plaintiff with a mixed personality disorder and history of substance abuse.  (Tr. 202-03).  He found that Plaintiff had moderate restrictions on activities of daily living and social functioning. (Tr. 205).  Additionally, Dr. Zwissler indicated mild limitations in maintaining concentration, persistence, and pace.  *Id*.   Dr. Zwissler concluded that Burroughs "remain[ed] capable of simple work in a low stress environment."  (Tr. 211).

### III.  **Disability Standard**

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  **Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  "[A] decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence would support a contrary

decision." *Id*.; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence has been defined as "such relevant evidence as a reasonable mind would accept as sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Accordingly, substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance. *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Furthermore, the substantiality of the evidence must be based on the record taken as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973).

## V.  Analysis

### A.  Weight Given to Medical Opinions

Plaintiff first argues that the ALJ failed to properly weigh the medical opinions under the six regulatory factors stated in 20 C.F.R. § 404.1527(d), and also failed to adequately articulate the weight given to such medical opinions.[1]  However, Plaintiff's argument is deficient because it offers no more than bare-boned legal assertions without any factual support.  Instead of stating facts to buttress his argument, Plaintiff's brief merely cites to three cases without offering any explanation as to how these cases relate to his argument.

The three cases to which Plaintiff cites are: (1) *Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009); (2) *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009); and (3) *Dues v. Astrue*, No. 1:09CV01951, 2010 WL 1855763 (N.D. Ohio May 10, 2010).  All three cases held that remand was warranted due to an ALJ's failure to state good reasons for assigning less than controlling weight

---

[1] The ALJ will consider all of the following factors in deciding how much weight to give to each medical opinion: (1) Examining Relationship; (2)Treatment Relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other Factors.  20 C.F.R. § 404.1527(d).

to a treating physician's opinion.  However, Plaintiff has not identified any treating physician on record who the ALJ failed to consider.  As such, it is not necessary for the Court to entertain issues not fully developed by the parties.  Consequently, the Court will restrict its review to the ALJ's alleged failure to properly weigh the remaining medical opinions pursuant to the six factors in 20 C.F.R. § 404.1527(d) and the ALJ's alleged failure to adequately articulate the weight given to such medical opinions.

Pursuant to the Commissioner's mandates, an ALJ "[shall] evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 404.1527(d).  Furthermore, Sixth Circuit case law recognizes that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson,* 378 F.3d at 545.  The ALJ's written decision did not explicitly set forth how he applied each of the factors listed in 20 C.F.R. § 404.1527(d) to the medical opinions.  However, a review of the record as a whole demonstrates that he contemplated these factors during his review of the evidence.  *See Hickey-Haynes*, 116 F. App'x 718 (6th Cir. 2004) (holding that although the ALJ did not specify her logic, the influence of each doctor's opinion was clear in her decision and thus in conformance with 20 C.F.R. § 404.1527(d)).  For instance, ALJ Stewart's decision noted that there were two examining reports from mental physicians on record and explicitly stated that he affirmed the "State Agency determination as to claimant's mental condition." (Tr. 17).  In doing so, the ALJ demonstrated that he assigned considerable weight to the opinion of state agency physician, Dr. Lewin.

Furthermore, the ALJ provided two pages of analysis examining the opinions of the physicians who evaluated Plaintiff's physical impairments and, subsequently, made clear the impact of those physicians' opinions in his decision.  For example, after the ALJ completed his discussion

8

of the claimant's medical history, he determined that Burroughs's complaints of adverse side-effects from heart medication were uncorroborated. (Tr. 19).  Additionally, the ALJ stated, "the record does not show consistent complaints of tiredness, chronic nausea or gastrointestinal problems." *Id.* Therefore, the Court rejects Plaintiff's argument that the ALJ failed to properly weigh the medical opinions because, although the ALJ may not have articulated his reasoning with great specificity, his overall opinion demonstrates that he sufficiently considered the medical opinions on record in accordance with 20 C.F.R. § 404.1527(d).

Even assuming *arguendo* that the ALJ had erred in evaluating the medical opinions, Sixth Circuit case law recognizes that, generally, the courts will review decisions of administrative agencies for harmless error.  *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001); *N.L.R.B. v. Wyman-Gordon Co.,* 394 U.S. 759, 766 (1969) (holding that courts need not remand where "remand would be an idle and useless formality").  Accordingly, the undersigned will not remand for further administrative proceedings unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Connor v. U.S. Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir.1983).

While it certainly would have been helpful for the ALJ to forthrightly state the weight he afforded each medical opinion, Plaintiff has not shown how such failure has prejudiced him.  An issue should not be averred to in a perfunctory manner leaving the court to put flesh on its bones.  *See Meridia Prods. Liab. Litig. v. Abbott Labs.,* 447 F.3d 861, 868 (6th Cir. 2006).  Therefore, the Court need not entertain such an argument.  *See Stenson v. Astrue,* No. 3:10CV397, 2011 WL 1136224, at *10 (N.D. Ohio Feb. 1, 2011) *report and recommendation adopted sub nom. Stenson v. Comm'r of Soc. Sec.,* No. 3:10CV397, 2011 WL 1136220 (N.D. Ohio Mar. 29, 2011) (refusing

to find prejudicial error where Plaintiff did not explain how a failure to discuss medical evidence prejudiced her or affected the ALJ's disability determination).

Each RFC report evaluating Plaintiff's physical limitations indicated that he was capable of performing light work.  *See* (Tr. 155, 214, 382).  Similarly, none of the physicians who assessed Burroughs's mental faculties opined that he was precluded from working.[2]  Thus, the medical opinions on record, both mental and physical, were consistent with the ALJ's determination that Burroughs was capable of performing work.  Therefore, this Court is not persuaded that remand will lead to a different conclusion.

### B.  The ALJ's Assessment of Plaintiff's Mental Impairments

Plaintiff's second challenge to the ALJ's decision concerns the ALJ's failure to consider all of the evidence regarding Plaintiff's mental impairment.  Plaintiff states the ALJ failed to consider: (1) the December 13, 2004 consultative report from Dr. Felker; (2) Dr. Zwissler's review of Dr. Felker's report; (3) Plaintiff's report to the Commissioner that he was getting depressed more often; and (4) Plaintiff's testimony that he suffers from depression but is unable to treat the condition because he cannot afford insurance.  (Pl. Br. at 7-8).  The Court will address each piece of evidence below.

The ALJ expressly addressed Dr. Felker's report in his opinion.  In his decision, ALJ Stewart stated:

> On December 13, 2004, the claimant told the examiner that he does some chores around the house, watches television and reads; he particularly enjoys reading history.  The examiner at this time

---

[2]Plaintiff alleges that Drs. Felker and Zwissler opined that he had a severe mental impairment and was precluded from performing a full range of work at all exertional levels.  However, the Court finds this allegation to be inaccurate and will discuss it in Section C of the Court's analysis.

> diagnosed no symptoms of depression and found only moderate limits on claimant's social functioning and only mild limits on claimant's attention and concentration.

(Tr. 17).  Although, ALJ Stewart referred to this report solely by the date on which the examination was conducted, this acknowledgment demonstrates that he considered Dr. Felker's report in his review of the evidence.

Likewise, the ALJ's opinion expressly refers to Burroughs's testimony regarding his struggle with depression and his inability to pursue treatment because he could not afford insurance. (Tr. 19). However, even if the ALJ erred by failing to further discuss Burroughs's inability to pay for insurance, Plaintiff has not been prejudiced.  As previously discussed, the ALJ determined that Burroughs's alleged depression was non-severe.  (Tr. 17).  Ultimately, then, Burroughs's inability to afford treatment for a non-severe impairment had no meaningful effect on his ability to work, nor the ALJ's disability determination.  Thus, the Court rejects Plaintiff's argument in relation to this piece of evidence in addition to Dr. Felker's report.

Plaintiff correctly notes that the ALJ's written decision did not mention Dr. Zwissler's review of Dr. Felker's report nor Plaintiff's report to the Commissioner that he was getting depressed more often.  The ALJ had a duty to consider all of the medical evidence on record.  20 C.F.R. § 404.1527(b).  However, "an ALJ can consider every piece of evidence without addressing in his opinion every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006).  Thus, remand is not necessarily warranted by an ALJ's failure to directly mention each piece of evidence in the record.  Burroughs has merely pointed out that the ALJ did not explicitly reference  two pieces of evidence. (Pl. Br. at 7).  He has neither shown how the ALJ's failure to discuss such evidence prejudiced him, nor how it affected the ALJ's

disability determination.  Thus, Plaintiff's second argument is unavailing.

### C. Hypothetical Posed to the VE

Once an ALJ determines that a claimant does not have the residual functional capacity to perform his past relevant work, the burden shifts to the ALJ to show that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Kirk, 667 F.2d at 529*.  To satisfy this burden, the ALJ's finding must be "supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs." *O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir.1978)*.  Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question. *Parks v. Soc. Sec. Admin., No. 09CV6437, 2011 WL 867214, at *3 (6th Cir. Mar. 15, 2011)*.  However, "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010)*.  Yet, hypothetical questions need only incorporate those limitations which the ALJ has found to be credible. *Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir.1993)*.

Plaintiff first contends that the ALJ's decision is not supported by substantial evidence because he failed to include Plaintiff's mental impairment in the hypothetical question presented to the VE.  Plaintiff, in support of this argument, notes that Drs. Zwissler and Felker found that he suffered from a severe mental impairment that precluded a full range of work at any designated level of exertion.  Burroughs also alleges that the ALJ speculated as to the seriousness of his medical condition.

Plaintiff's argument is not well taken.  Contrary to Plaintiff's assertion, neither Dr. Zwissler nor Dr. Felker stated that Burroughs suffered from a severe impairment.  Moreover, neither doctor opined that Burroughs was precluded from a full range of work.  In fact, Dr. Zwissler concluded that Burroughs remained capable of simple work.  (Tr. 211). Furthermore, Dr. Felker assessed a GAF score of 56, indicating moderate restrictions, but never overtly stated that Plaintiff suffered from a severe impairment.  (Tr. 189-194).  As discussed *supra*, the ALJ gave considerable weight to the opinion of Dr. Lewin, who found that Plaintiff's mental impairment was "not severe."  (Tr. 163). After concluding that the record as a whole did not support any mental functional limitations, the ALJ was not required to incorporate such a limitation into the hypothetical question he posed to the vocational expert.  Although ALJ Stewart found that Burroughs did not suffer from a severe mental impairment, he still questioned the VE about employer tolerances for being off task during the workday due to deficient concentration or pain, thereby implicitly considering a limitation on Burroughs's ability to concentrate.  Consequently, Plaintiff's first contention fails.

Plaintiff's second contention is that ALJ Stewart failed to take into account Plaintiff's environmental restrictions, noted by Dr. Sagone.  (Pl. Br. 9).  Dr. Sagone's report lists two environmental restrictions on Plaintiff's ability to work.  (Tr. 217).  First, Dr. Sagone found that Burroughs should avoid "concentrated exposure to heat."  *Id*.  Second, he advised Plaintiff to avoid working around machinery or unprotected heights.  *Id*.  Notably, Dr. Sagone did not physically examine Burroughs and was the only physician to put such environmental restrictions on Plaintiff's ability to work.

ALJ Stewart did not include either restriction in the hypothetical questions posed to the VE. The ALJ implicitly rejected the environmental restrictions imposed by Dr. Sagone by failing to

13

include them in Plaintiff's RFC.  Of the three RFC reports on record evaluating Plaintiff's physical limitations, Dr. Sagone's evaluation was the only report to impose any environmental restriction on Plaintiff's ability to work.  As such, the doctor's opinion was against the weight of the evidence and it was entirely within the ALJ's discretion to find the environmental restrictions incredible.

Moreover, even if the ALJ had included these restrictions in the hypotheticals posed to the VE, it is not evident that the VE would have identified different jobs.  There were thousands of jobs identified by the VE that would not have been eliminated by the limitations Burroughs contends should have been included by the ALJ.[3]  *See Roddy v. Comm'r of Soc. Sec., No. 1:06CV673, 2008 WL 820141, at *7 (S.D. Ohio Mar. 24, 2008)* (rejecting claimant's argument that the ALJ's hypothetical was improper because it did not include an inability to stoop when most of the jobs identified by the VE did not involve any stooping).  Though Dr. Sagone's environmental restrictions would preclude work as a machine feeder or a sorter, the VE named four other jobs (i.e. mail clerk, account clerk, telephone clerk, and housekeeping) which Plaintiff could perform despite these limitations.

### D. Additional Evidence

Plaintiff's final argument is that remand is warranted to consider the report of Dr. John Hanicak.  (Tr. 452).  Dr. Hanicak wrote a letter stating that Plaintiff suffered from Addisons' disease, irregularities in bowel habits, significant social anxiety, a myocardial infarction, and had three cardiac stents requiring daily medication.  *Id.*  After the ALJ issued his decision, Burroughs

---

[3]*See* DICOT 209.687-026 (job of mail clerk involves no climbing, no moving mechanical parts, no exposure to extreme heat, and no high exposed places); DICOT 239.362-010 (job of telephone clerk involves no climbing, no moving mechanical parts, no exposure to extreme heat, and no high exposed places); DICOT 321.137-010 (job of housekeeping involves no climbing, no moving mechanical parts, no exposure to extreme heat, and no high exposed places).

14

submitted Dr. Hanicak's report to the Appeals Council.  (Tr. 450-52).  Plaintiff maintains that Dr. Hanicak is his treating physician and because the record lacks an RFC report from a treating physician, the Court must remand the case for further consideration of Dr. Hanicak's report.

A court may remand a case for consideration of additional evidence only where the plaintiff shows that the evidence is (1) new, (2) material, and (3) there was good cause for the failure to incorporate such evidence into the prior proceeding.  *42 U.S.C. § 405(g); Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).  "New evidence must indeed be new; it cannot be cumulative of evidence already in the record."  *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002).  To satisfy the requirement of materiality, the claimant carries the burden of "demonstrat[ing] that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Good cause is shown where the claimant gives "a valid reason for failing to obtain relevant examinations prior to the hearing."  *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).  Remand is only proper when all three elements are satisfied.

## 1. New

Evidence is only new if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). The Court finds that the report issued by Dr. Hanicak does not constitute as new evidence.  Plaintiff has failed to show that the evidence was not available at the time of the administrative proceeding before the ALJ.  Moreover, Plaintiff proffers no reason as to why he could not have sought Dr. Hanicak's opinion prior to the hearing.  Presumably, Plaintiff could have acquired the opinion of a treating physician prior to the hearing before the ALJ.  Thus, Dr. Hanicak's report is not new because it was

15

obtained after the hearing although it was available at a prior time.  *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (*"Although [the claimant] had not prepared this new version of her history before the first hearing, all the information in it was available before the ALJ's decision. Therefore, it is not new information."*).

### 2. Material

Furthermore, remand is unnecessary because Dr. Hanicak's report is immaterial.  Material evidence is evidence that would likely change the Commissioner's decision.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Plaintiff contends that Dr. Hanicak's RFC report is material because he is Plaintiff's treating physician and there was no RFC report from any treating physician on record.  However, consideration of Dr. Hanicak's evaluation does not appear to further Plaintiff's cause.  Dr. Hanicak's assessment merely gives an overview of Plaintiff's medical problems and provides the doctor's opinion as to the factuality of Plaintiff's maladies– maladies already fully considered by the ALJ in his RFC determination.  Moreover, Plaintiff provides no explanation as to how this report might cause the ALJ to reach a different disposition.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Accordingly, Dr. Hanicak's report does not fall within the administration's definition of material evidence.

### 3. Good Cause

Because Dr. Hanicak's assessment is neither new nor material, it is unnecessary for the Court to further analyze the requirement of good cause.   As stated above, Plaintiff has offered no valid explanation for his delay in seeking Dr. Hanicak's opinion in this matter.

16

## VI. <u>Conclusion</u>

For the reasons stated herein, the Magistrate Judge orders the Commissioner's final decision be AFFIRMED, and that judgment be entered in favor of the Commissioner.


IT IS SO ORDERED.


                                            <u>/s/ Kenneth S. McHargh</u>
                                            Kenneth S. McHargh
                                            United States Magistrate Judge


Date: <u>July 1, 2011</u>.